U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

DEC 13 2006

ROBERT H. SHEMWELL, CLERK
BY_____
        DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

DAVID FRAZIER, ET AL.

versus

CITY OF BOSSIER CITY, ET AL.

CIVIL ACTION NO. 02-0698
JUDGE S. MAURICE HICKS, JR.

## MEMORANDUM RULING

Before the court is a supplemental motion for summary judgment filed by the defendants, the City of Bossier City ("Bossier City" or "defendant") and Lance Zaner ("Zaner" or "defendant"). See Record Document 165. For the reasons set forth below, the defendants' motion for summary judgment is **GRANTED**.

## I. BACKGROUND

On April 16, 2001, Emmanuel Frazier died from gunshot wounds inflicted by former Bossier City Police Officer Zaner, one of the two remaining defendants in this matter. A 911 dispatcher received a call from Mark Yates ("Yates"), an employee of the Texaco station located at 1290 Barksdale, Bossier City, Louisiana. Yates relayed that "a black man probably about six foot, bald, had a . . . uh . . . blue pants, gold and blue shirt. He has a gun in back of his pants and he came in here and he was like I guess casing me out." Record Document 165, Exhibit A, at 2. Yates

1

further informed the dispatcher that the man had left the Texaco store and was "at the Speedway station now across the street from us." Id. at 3. After disconnecting with Yates, the dispatcher made the following radio call:

> 305, signal 35 at Texaco, Hamilton and Barksdale, 1290 Barksdale Texaco, Signal 35. Suspect is now at the Speedway. He came in the Texaco acting Signal 35, clerk noticed a pistol tucked in the back of his pants. He's supposed to be on a bicycle. Suspect is a black male, medium build, black hair, gold and blue shirt and blue pants.

Id. at 5. The suspect in question is the decedent in this case, Emmanuel Frazier ("Frazier").

The first officer to respond to the dispatcher's call was Daniel Murray ("Murray"). Murray located Frazier inside the Speedway, but waited for backup before confronting him. Officer Robert Brown ("Brown") then arrived at the scene and he and Murray observed Frazier checkout and exit the store. After an attempted Terry stop and frisk, Frazier struggled with Officers Murray and Brown and then took flight.[1]

Officer Zaner arrived on the scene just as Frazier was fleeing Murray and Brown. Zaner easily observed signs of a struggle, as Brown was just rising from the ground and newspaper stands "and a trash can or similar object" had been overturned in front of the store. Record Document 165, Exhibit B at 2. Zaner then

---

[1] The specific details of this initial encounter with Officers Murray and Brown are irrelevant to the instant allegations against Zaner and therefore will not be discussed in this motion.

2

joined Murray in pursuit of Frazier.

The officers discovered Frazier hiding in the brush inside an area enclosed by a chain link fence. The enclosure measured approximately "8 to 10 feet wide and maybe 60 to 70 feet long." Record Document 165, Exhibit B at 6. After locating Frazier with a flashlight, Murray commanded, "Put your hands up. Put your hands up." Id. at 2. Zaner then climbed the fence into the enclosure in order to subdue Frazier. Zaner voiced numerous directives ordering Frazier to put his hands up, but Frazier replied "I'm not scared of your fucking gun. . . . come in and get me." Id. at 3. However, he eventually moved away from the underbrush to a position where Zaner and Murray could see him. Id. at 3. Following another series of repeated directives, Frazier dropped to his knees, placed his hands behind his back, and retorted, "Just fucking handcuff me." Id. at 4. Zaner then attempted to push Frazier to the ground with his foot, ostensibly in order to secure the handcuffs, but Frazier grabbed the fence, thereby preventing himself from falling. Recognizing the difficulty of the situation, Zaner asked for Murray's assistance. Murray attempted to handcuff Frazier, but Frazier resisted, resulting in a struggle between the two men. While Murray held Frazier from behind in a bear hug, Zaner approached and struck Frazier in the face in an attempt to subdue him. However, Frazier escaped Murray's hold, threw Murray into the fence and began swinging at Zaner. In response, Zaner backed away from Frazier to put some distance between the two and drew his gun

for protection. He also simultaneously commanded Frazier to cease his advance and to lay down on the ground.² According to Zaner's account of the incident, Frazier refused to heed his commands and continued his advance, swinging his arms in an attempt to secure Zaner's firearm, prompting Zaner to shoot Frazier at least five times.

Brown alerted the dispatcher that shots had been fired and that medical assistance was necessary. Frazier was taken to Louisiana State University Health Sciences Center in Shreveport, Louisiana. All attempts to resuscitate him failed, and he was subsequently pronounced dead. Lakendra Williams, as natural tutrix to Carisma Williams, Frazier's daughter, then filed the instant wrongful death and survival action on behalf of Carisma Williams.³

The plaintiff alleges violations under 42 U.S.C. § 1983, asserting an excessive force claim against Zaner and municipal liability against Bossier City based on an alleged custom, policy, or practice of violating constitutional rights, in addition to a state law claim for intentional infliction of emotional distress. However, numerous procedural defects since the inception of this suit have undermined the merits of her action. Indeed, due to the plaintiff's failure to respond to the defendants' requests

---

² In his deposition, Murray stated that he did not hear Zaner issue any verbal commands.

³ Frazier's parents also brought suit, but they were dismissed in a November 12, 2002 Order by Judge Rebecca F. Doherty. See Record Document 27.

for admissions, the following issues were deemed admitted pursuant to Federal Rule of Civil Procedure 36 (see Record Document 160): (1) "Plaintiff is aware of no witness who alleges or supports the proposition that Emmanuel Frazier would have lived if he had received prompt medical attention"; (2) "Plaintiff is aware of no witness who alleges or supports the proposition that City of Bossier City has a policy of arresting African-Americans, based on allegations which it was aware did not constitute reasonable suspicion or probable cause"; (3) "Plaintiff is aware of no witness who alleges or supports the proposition that Mark Yates and his co-workers made calls and statements to the Bossier City Police Department for the purpose of discriminating against Emmanuel Frazier by reason of his race"; (4) "Emmanuel Frazier had difficulty with police, teachers, employers, or other authority figures"; (5) "Police officers had reasonable suspicion to make a stop of Emmanuel Frazier at the Speedway"; (6) "Emmanuel Frazier prevented the officers from doing a pat down for weapons at the Speedway"; (7) "Emmanuel Frazier violently resisted the officers' efforts to handcuff Frazier behind the Speedway"; (8) "When behind the Speedway, Emmanuel Frazier did not comply with officers' commands to get on the ground"; (9) "Emmanuel Frazier attempted to attack Officer Zaner and to grab Zaner's gun as Zaner attempted to back away from Emmanuel Frazier"; (10) "Officer Zaner was justified in believing Emmanuel Frazier presented a threat of death or serious bodily injury at the time of the shooting of Frazier"; (11) "The race of Emmanuel Frazier did

5

not motivate Officer Zaner to shoot Emmanuel Frazier"; and (12) "Plaintiff has no document or other paper where Emmanuel Frazier identified Carisma Williams as his daughter." Record Document 165, Exhibit 5.

## II. LAW AND ANALYSIS

A. **Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 263 (5th Cir. 2002). If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Littlefield v. Forney Indep. Sch. Dist., 268 F.3d 275, 282 (5th Cir. 2001). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Alton v. Tex. A&M

6

Univ., 168 F.3d 196, 199 (5th Cir. 1999).

B.  **Excessive Force.**

As mentioned earlier, the plaintiff instituted a section 1983 action against Zaner. Zaner contends that the facts preclude a finding of excessive force, and that, in any event, he is entitled to a finding of qualified immunity. An excessive force claim is properly analyzed under the Fourth Amendment's objective reasonableness standard. See Graham v. Conner, 490 U.S. 386, 397, 109 S. Ct. 1865 (1989). It is well-settled that if a law enforcement officer uses excessive force in the course of making an arrest or otherwise seizing a person, the constitutional guarantee against unreasonable seizures is implicated. It is also well-settled that use of deadly force does not violate the constitution if "the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." Tennessee v. Garner, 471 U.S. 1, 105 S. Ct. 1694 (1985).

A plaintiff can prevail on an excessive force claim only by proving each of the following three elements: "(1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." Ikerd v. Blair, 101 F.3d 430, 433-34 (5th Cir. 1996) (quoting Spann v. Rainey, 987 F.2d 1110, 1115 (5th Cir. 1993)). Here, the parties do not dispute that Frazier suffered injury and death which resulted from Zaner's use of force. Accordingly, the court's analysis will focus only on whether

7

Zaner's use of force was "clearly excessive" and whether it was "objectively unreasonable in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." Graham, 490 U.S. at 397, 109 S. Ct. at 1872.

> Graham further instructs that
>
> The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments- in circumstances that are tense, uncertain, and rapidly evolving- about the amount of force that is necessary in a particular situation.

Id. at 396-97.

The summary judgment evidence presented to the court, including the plaintiff's admissions, establishes the following sequence of events. Officers Murray and Brown responded to a 911 call placed by Yates, warning of a suspicious-looking man with a gun tucked into his pants at the Speedway. Murray and Brown had reasonable suspicion to stop Frazier at the Speedway. Frazier resisted the officers' pat down of him in search of the weapon identified by Yates. Frazier also violently and forcefully resisted the officers' efforts to gain control of and handcuff him. He then fled to an enclosure behind the Speedway in an attempt to evade capture. Once discovered, Frazier disobeyed all police commands to get on the ground and struggled violently with both Zaner and Murray, who attempted numerous times to

secure him with handcuffs. All efforts to gain control of Frazier, through use of non-deadly force, including striking him in the face, were wholly unsuccessful. Although Zaner drew his weapon and once again commanded Frazier to get on the ground, Frazier continued to advance and attempted to gain control of Zaner's firearm. Stating that he believed Murray and he were in serious danger, Zaner ultimately shot Frazier.

Based on these facts, the court simply cannot conclude that a reasonable officer in Zaner's position would not have believed that Frazier posed an immediate threat of serious bodily harm or death to Zaner, Murray, or others. See Colston v. Barnhart, 130 F.3d 96, 100 (5th Cir. 1997). Accordingly, Zaner's decision to use deadly force was objectively reasonable under the circumstances, and the facts cannot support a finding of excessive force in violation of the Fourth Amendment.

**C. Qualified Immunity.**

The Supreme Court has instructed that the threshold inquiry in a qualified immunity analysis is whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001). If the facts do not support a constitutional violation, then the inquiry ceases there. See id. However, if the injured party is able to demonstrate the violation of a constitutional right, then the court must undertake a two-step analysis: (1) whether

9

the violated right was clearly established and (2) whether the defendant's conduct was objectively reasonable under existing clearly established law. See Colston v. Barnhart, 130 F.3d 96, 99 (5th Cir. 1997). In the instant case, based on the aforesaid summary judgment evidence, the court determines that the facts alleged do not support the allegation that Zaner's conduct violated Frazier's constitutional rights. Simply put, Zaner did not violate Frazier's constitutional right to be free from excessive force. To the contrary, Zaner's actions under the circumstances were objectively reasonable. Thus, had the defense of qualified immunity been necessary for Zaner, he would have been entitled to its use.

**D. Municipal Liability Pursuant To 42 U.S.C. § 1983.**

Title 42, United States Code, section 1983 "prohibits persons acting under the color of law from depriving another of any rights, privileges, and immunities secured by the Constitution and laws." Meadowbriar Home For Children, Inc., v. G.B. Gunn, 81 F.3d 521, 532 (5th Cir. 1996) (internal marks omitted). Cities and municipalities qualify as "persons" for purposes of section 1983 liability. See id. At the root of any discussion of municipal liability lies the Supreme Court opinion in Monell v. New York City Department of Social Services, 436 U.S. 658, 98 S. Ct. 2018 (1978). Monell defined the municipal liability standard such that municipalities are held liable for the acts of their employees or agents only if the injury inflicted results from the "execution of a government's policy or custom, whether made by its lawmakers or

by those whose edicts or acts may fairly be said to represent official policy...." Id. at 694, 98 S. Ct. at 2037-38.

Thus, to establish liability under section 1983, the plaintiff is required to prove: (1) a policy or custom existed, (2) the governmental policy makers actually or constructively knew of its existence, (3) a violation of constitutional rights, and (4) the custom or policy served as the "moving force" behind the violation. See Meadowbriar, 81 F.3d at 532-33. Accordingly, "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur...." Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001).

Evident from these principles is the crucial and steadfast requirement that the plaintiff prove the existence of a constitutional violation. As previously discussed, however, Williams is unable to meet this burden, as the court has concluded that Frazier's constitutional rights were not violated. Notwithstanding the aforesaid legal bar to the claim, the court nevertheless concludes that Williams cannot prove the existence of an official policy or custom.

Official policy has been defined as "a *persistent widespread practice of city officials or employees*, which, although not authorized by officially adopted and promulgated policy, is so *common and well settled* as to constitute a custom that fairly represents municipal policy." Nobby Lobby, Inc. v. City of Dallas, 970 F.2d 82, 92 (5th Cir. 1992) (emphasis in original). The plaintiff attempts to demonstrate an

11

official policy or custom by introducing the shooting of Terrance Romelien ("Romelien"), a man allegedly armed with a knife who was fatally wounded by Bossier City Police Officer Brad Crager ("Officer Crager"). Williams contends:

> On or about March 20, 1999, Bossier Police Department Officer Brad Crager ("Crager") approached an African American male, Terrance Romelien ("Romelien"), pursuant to a report that a Black male was creating a disturbance at the Waffle House . . . . After approaching Romelien, . . . Crager pulled his weapon and intentionally and fatally shot Romelien, firing at least multiple shots into the body of Romelien. At the time Crager shot Romelien, Crager had not witnessed Romelien committing a violent crime and Romelien had not actually threatened Crager with a gun. At the time Crager shot Romelien, Romelien was not armed with a gun. After a search by the Bossier City Police Department, a weapon was not found on or near the body of Romelien. . . . [A]fter the shooting of the Romelien, [the City of Bossier] supported the actions of Crager and publicly declared that his actions were consistent with the training, policy and procedures of the Bossier City Police Department, and that the actions of Crager did not violate any of the policies and procedures of the Bossier City Police Department. Further, . . . [the City of Bossier] did not discipline [Crager] with respect to such shooting[], and did not alter [the] training of police officers . . . .

Record Document 96 at 4-5.

Essentially, Williams introduces the Romelian incident in an attempt to prove that Bossier City has a policy or custom of infringing on constitutional rights by using deadly force against its suspects. However, she has failed to set forth sufficient facts to establish any similarity between the Romelien shooting and the instant matter. In fact, she provides the court with only a very barebones account of the Romelien shooting, such that this court is left without a clear grasp of the critical facts, including the disturbance Romelien was allegedly causing in the Waffle House,

12

what information was reported to the police officers called to the scene, Romelien's demeanor once police arrived at the scene, and most importantly, what course of events prompted the shooting.

Furthermore, the plaintiff's version of the facts neglects to demonstrate whether Officer Crager acted improperly given the circumstances at the time. Instead, the plaintiff merely avers that police were called to the scene due to a disturbance of some sort and that Officer Crager intentionally shot Romelien, resulting in the latter's death. Such an ambiguous and obviously incomplete account of the shooting, especially given the absence of proof of substantial similarity or even a link to the shooting of Frazier, simply cannot suffice to demonstrate an official custom or policy. Accordingly, Williams cannot sustain the burden of establishing municipal liability under section 1983.

### E. Intentional Infliction Of Emotional Distress.

Williams's final remaining claim is that the actions of Zaner and Bossier City were intentional, extreme and outrageous, and caused her to suffer severe mental distress. However, in light of the dismissal of the claims upon which Williams's intentional infliction of emotional distress claim is based, this claim is barred as a matter of law.

To establish a claim for intentional infliction of emotional distress under Louisiana Civil Code article 2315, Williams must prove that: (1) the defendants'

conduct was extreme and outrageous; (2) the emotional distress she suffered was severe; and (3) the defendants desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from the conduct. See White v. Monsanto Co., 585 So.2d 1205, 1209 (La. 1991). Explaining the meaning of "extreme and outrageous" conduct, the Louisiana Supreme Court stated, "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Id. at 1209.

Because the court finds that Zaner's actions were objectively reasonable under the totality of the circumstances and that Frazier's constitutional rights were not violated, the plaintiff cannot establish a claim for intentional infliction of emotional distress because she cannot prove the "extreme and outrageous" element. See Thompson v. Galveston, 979 F.Supp. 504, 512-13 (S.D. Tx. 1997). Actions that are found "reasonable" under the law cannot be deemed extreme or outrageous. See DeLeon v. City of Corpus Christi, No. 05-096, 2005 WL 2045562, *3 (S.D. Tx. Aug. 24, 2005). As the evidence supports the reasonableness of the defendants' actions, the defendants' conduct cannot be said to be extreme and outrageous. Accordingly, the plaintiff's claim for intentional infliction of emotional distress is barred as a matter of law.

## III. CONCLUSION

Based on the foregoing analysis, the defendants' motion for summary judgment (Record Document 165) is **GRANTED**. All claims by the plaintiff against the defendants are **DISMISSED WITH PREJUDICE.**

A judgment consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this 13th day of December, 2006.

JUDGE S. MAURICE HICKS